Robert S. Crowder SBN 199556
Email: rcrowder@tresslerllp.com
Joanna Maxwell SBN 290025
Email: jmaxwell@tresslerllp.com
**TRESSLER LLP**
6100 Center Drive, Suite 1175
Los Angeles, California 90045
Telephone: (310) 203-4800
Fax: (323) 486-2704

Attorneys for Plaintiffs
**INTERESTED UNDERWRITERS AT LLOYD'S**
*A/S/O* **CAYUSE VINEYARDS LLC**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTERESTED UNDERWRITERS AT LLOYDS OF LONDON *a/s/o* CAYUSE VINEYARDS LLC,<br><br>Plaintiffs,<br><br>vs.<br><br>LAFITTE CORK & CAPSULE, INC.,<br><br>Defendant. | Case No.: 3:20-cv-00565<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

COME NOW, the Plaintiffs, INTERESTED UNDERWRITERS AT LLOYDS OF LONDON *a/s/o* CAYUSE VINEYARDS LLC, by and through their attorneys, and hereby set forth and allege to this Court upon information and belief as follows:

1. This is a subrogated action to recover damages due to product liability, breach of contract, negligence and gross negligence, breach of express or implied warranty, strict products liability, and negligent misrepresentation.

///

## JURISDICTION AND VENUE

2. Plaintiffs bring this complaint under federal diversity jurisdiction, 28 U.S.C. § 1332, as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000, exclusive of interest and costs.

3. Venue is proper in that the location of the events which give rise to this action are within the boundaries of this District.

## THE PARTIES

4. At all material times, Interested Underwriters of Lloyds of London (hereinafter "Lloyds" or "Plaintiffs") are the subrogated underwriters of Cayuse Vineyards LLC (hereinafter "Cayuse") whose underlying claims are the subject matter of this action.

5. Subrogees, Interested Underwriters of Lloyds of London, consist of the following:

   a. At all material times, Argenta Underwriting No.9 Ltd was and is a corporation existing by virtue of the laws of a state other than California with a principal place of business located at 5th Floor, 70 Gracechurch Street London, EC3V 0XL, UK, and is an insurance company that is a member of Lloyds of London; known as Company no: 0739046, and was on the slip that insured Cayuse Vineyards LLC.

   b. At all material times, Newline Corporate Name Limited was and is a corporation existing by virtue of the laws of a state other than California with a principal place of business located at 55 Mark Lane London UK and is an insurance company that is a member of Lloyds of London; known as Company number 03223678, and was on the slip that insured Cayuse Vineyards LLC.

   c. At all material times, Prosight Specialty (ECUCM) Limited (now known as R&Q Capital no. 6 Limited), and Prosight Specialty (TSMC) Limited (now known as R&Q Capital no. 7 Limited), were and are corporations existing by virtue of the laws of a state other than California with principal places of business located at 71 Fenchurch Street London, EC3M 4BS, UK, and are insurance companies that are members of Lloyds of London; known as Company nos. 07066541 and 07066562 respectively, and were on the slip that insured Cayuse Vineyards LLC.

   d. At all material times, Barbican Corporate Member Limited and Barbican Corporate Member (no.6) Limited were and are corporations existing by virtue of the laws of a state other than California with a principal place of business located at 33 Gracechurch Street London, EC3V 0BT, UK and were insurance companies that are members of Lloyds of London; known as Company nos. 06400087 and 03217775 respectively, and were on the slip that insured Cayuse Vineyards LLC.

   e. At all material times, Ark Corporate Member Limited, Ark Corporate Member (No.2) Limited, Ark Corporate Member (No.3) Limited and Ark Corporate Member (No. 4) Limited were and are corporations existing by virtue of the laws of a state other than California with principal places of business located at 30 Fenchurch Avenue, London EC3M 5AD, and were and are insurance companies that are members of Lloyds of London; known as Company nos. 06081055, 06430160, 06756414, 08726603 respectively, and were on the slip that insured Cayuse Vineyards LLC.

   f. At all material times, Brit UW Limited was and is a corporation existing by virtue of the laws of a state other than California with a principal place of business located at The Leadenhall Building 122 Leadenhall Street London, EC3V 4AB, UK and is an insurance company that is a member of Lloyds of London; known as Company no: 03217775, and was on the slip that insured Cayuse Vineyards LLC.

  6. Subrogor Cayuse Vineyards LLC (hereinafter "Cayuse"), was and is a corporation that produces and bottles high quality wine and is and was existing by virtue of the laws of the state of Washington with a principal place of business located at 7 E Main St, Walla Walla, WA 99362.

  7. Defendant, Lafitte Cork & Capsule, Inc. (hereinafter "Lafitte" or "Defendant'), is a manufacturer of corks for wine bottles with its principal place of business located at 45 Executive Court, Napa, California 94558.

  8. This Court has jurisdiction over Lafitte as Lafitte is a resident in the State of California and is responsible for breaching a contract in the State of California, and in this District, by failing to fulfill terms required by the contract to be performed in the State of California, and in this District, as set forth herein.

9. Plaintiffs bring this action on their own behalf and as agent and/or trustee on behalf of and for the interest of all parties who may be or become interested in the said property or claim as more fully described below and as their respective interests may ultimately appear. Plaintiffs are entitled to maintain this action.

## INTRADISTRICT ASSIGNMENT

10. Because the events giving rise to this action took place in Napa County, intradistrict assignment is proper to the San Francisco/ Oakland Division pursuant to Civil L.R. 3-2(d)

## RELEVANT FACTS

11. Lafitte is a manufacturer of corks and capsules used in the bottling of wine. On its website it states: "We take pride in ensuring the highest quality goods and services and we guarantee the integrity of our products during storage, handling and shipping to your winery."

12. On April 24, 2017 Cayuse purchased 139 unbranded corks, 43,000 Cayuse-branded corks and 1,500 Hors Catégorie-branded corks from Lafitte by invoice number INV00000000063219 for an amount of $68,928.20.

13. On May 17 through May 19, 2017, Cayuse began using the corks purchased from Lafitte in bottling their 2015 vintage of 9 of Cayuse's award winning Hors Catégorie wines, Bionic Frog Syrah, Camaspelo, Cailloux Vineyard Syrah, En Cerise Vineyard Syrah, En Chamberlin Vineyard Syrah, Flying Pig, Impulsivo, Widowmaker and Wallah Wallah Syrah Special #8 as well as Hors Catégorie Syrah. .

14. During the corking of the Hors Catégorie wines on May 17th, Cayuse noticed during its quality control testing that when the corks were inserted into the bottles, they expelled small pieces of paraffin into the wine. Photographs were immediately taken and sent to the operations and quality control manager at Lafitte.

15. Cayuse stopped the bottling process and discussed the problem with the defective corks with defendant Lafitte.

16. Lafitte assured Cayuse that the cork contamination would only affect the Hors Catégories branded corks and not with the other corks Cayuse purchased from Lafitte. Lafitte advised that Cayuse could continue with the bottling process for the other wines because these corks were good.

17. In fact, Lafitte did little to no investigation into the issues Cayuse was having with the corks, especially as it concerned the corks for the wine other than the Catégories Hors branded wine. This wine was branded "CAYUSE".

18.     Relying on Laffite's representation that the remaining corks were of sufficient quality that would not contaminate its wine, Cayuse began the bottling operations for the 38,000 bottles of CAYUSE branded wine.

19.     On May 19, 2017, after the bottling was concluded, a representative of Lafitte came to Cayuse to discuss what had happened.  Together with Cayuse, pictures were taken of one bottle of each of the wines Bionic Frog Syrah, Cailloux Vineyard Syrah and Hors-Categorie Syrah.

20.     The representative of Lafitte left Cayuse with the remaining bags of corks that Cayuse had purchased.

21.     On May 23, 2017, Lafitte admitted that the Lafitte corking machines applying the paraffin coating were new and shared a paraffin dosing system and that the subject corks had wax contamination.

22.     After investigation, on or about August 30, 2017, Lafitte called Cayuse and admitted that the contamination was a Lafitte issue and that they would resolve it with their liability carrier, Travelers.

23.     Cayuse later discovered that a significant amount of bottles of the CAYUSE branded wine from the May 2017 bottling was contaminated with flakes of paraffin, and, in some cases, an oily film.

24.     To determine how widespread the problem was, a joint inspection took place between Lafitte and Cayuse.  A military protocol sampling was used to provide statistically significant data as to how many of the May 2017 bottles were contaminated.

25.     On September 2017, the testing protocol was performed. The conclusion was that each bottle of wine that was sampled was contaminated.

26.     Cayuse made a claim to its insurers, Lloyds, for total loss of the wines bottled in May 2017.

27.     At all times relevant hereto, a contract of insurance for property damage was in effect between Lloyds and Cayuse, which provided coverage for, among other things, loss or damage to Cayuse's wines during bottling.

28.     Pursuant to the aforementioned contract of insurance between Lloyds and Cayuse, monies have been expended on behalf of Cayuse to the detriment of Lloyds due to the contamination and the loss of the product.

29.     As Lloyds has sustained damages as a result of said expenditures, expenditures rightly the responsibility of the defendant, Lloyds has an equitable right of subrogation and is

subrogated, to the extent of its expenditures, to the rights of its insured with respect to any and all claims for damages against the defendant.

30. By reason of the foregoing, Plaintiffs have sustained losses which will be shown with specificity at trial, no part of which has been paid, although duly demanded, which are presently estimated to be $3,537,167.50.

## FIRST CLAIM FOR RELIEF
## BREACH OF CONTRACT

31. Plaintiffs repeat, reiterate and reallege each and every allegation set forth in paragraphs 1 through 30, inclusive, as if herein set forth at length.

32. Cayuse entered into a valid contract for the sale and purchase of the corks with Lafitte whereby, for good and valuable consideration, Lafitte contracted to provide Cayuse with quality corks for its wine bottling.

33. Cayuse paid good and valuable consideration for the corks and performed all of the conditions precedent on its part to be performed under said contract.

34. Lafitte delivered materially defective corks which introduced paraffin particulates, silicon and an oily film into the Cayuse wine, thereby contaminating the wine and making it unfit to sell in the wine market under Cayuse branding, and which constitutes a breach of the contract.

35. As a result, Cayuse sustained damages due to Defendant, Lafitte's, breach of the contract with Cayuse.

36. As a proximate result of the foregoing, Plaintiffs have sustained damages in the amount of no less than $3,537,167.50, as nearly as presently can be determined, no part of which has been paid, despite due demand.

## SECOND CLAIM FOR RELIEF
## NEGLIGENCE AND GROSS NEGLIENCE

37. Plaintiffs repeat, reiterate and reallege each and every allegation set forth in paragraphs 1 through 36, inclusive, as if herein set forth at length.

38. Lafitte owed a duty to its customer, Cayuse, to exercise care in designing, manufacturing, assembling, shipping and selling the corks to Cayuse.

39. Lafitte knew, or reasonably should have known, that improperly designed or defective corks could cause contamination of Cayuse's wine.

40. Further, Lafitte acted with negligence and gross negligence when, after having been notified of defective corks by Cayuse, Lafitte assured Cayuse that it could continue its bottling because the cork contamination was limited to only the Hors Catégories branded corks.

41. In making these representations Lafitte breached its duty of care and acted with reckless disregard to Cayuse.

42. By reason of the negligent and grossly negligent conduct of Lafitte, Cayuse's wine was contaminated causing damage to Plaintiffs. The damages suffered by Plaintiffs do not ordinarily occur in the absence of someone's negligence.

43. The aforesaid damage was a proximate result of Lafitte's negligent and grossly negligent conduct and without any fault on the part of Cayuse.

44. As a proximate result of the foregoing, Plaintiffs have sustained damages in the amount of no less than $3,537,167.50, as nearly as presently can be determined, no part of which has been paid, despite due demand.

## THIRD CLAIM FOR RELIEF
## BREACH OF EXPRESS and IMPLIED WARRANTIES

45. Plaintiff repeats, reiterates, and realleges each and every allegation set forth at length in paragraphs 1 through 44, as if set forth fully herein.

46. At all relevant times, Defendant, Lafitte was in the business of designing, manufacturing, marketing, selling and distributing corks for purchase by the public and knew, or had reason to know, of Cayuse's intended use of the corks.

47. At all relevant times, the Defendant expressly and /or impliedly warranted, *inter alia*, that the corks were suitable for their intended purpose, were merchantable, free from faulty materials, constructed according to sound engineering and industry standards, free from defects, and constructed in a workmanlike manner.

48. Cayuse purchased the corks based upon the Defendant's representations and related express and implied warranties concerning the quality and condition of the corks.

49. The Defendant breached the express and implied warranties applicable to the corks and, as direct result, after the corks were inserted in the wine bottles, they leaked paraffin and/or silicon such that the wine was contaminated and rendered a total loss.

50. By reason of the foregoing, Plaintiffs have sustained losses which will be shown with specificity at trial, no part of which has been paid, although duly demanded, which are presently estimated to be no less than $3,537,167.50.

## FOURTH CLAIM FOR RELIEF
## STRICT PRODUCTS LIABILITY

51. Plaintiffs repeat, reiterate, and reallege each and every allegation set forth in paragraphs 1 through 50, inclusive, as if herein set forth at length.

52. At all times relevant to this action, Lafitte designed, manufactured, assembled, marketed, advertised, sold, distributed and/or otherwise placed into the market and stream of commerce corks which, among other things, were intended to be used by wineries to bottle their wine.

53. At all times relevant to this action, Lafitte marketed its corks as premium quality corks.

54. Lafitte knew, or with the exercise of reasonable care should have known, that improperly designed or manufactured corks could cause contamination to wines.

55. Lafitte had a duty to exercise reasonable care in the design, manufacturing, testing, inspection, and marketing of the subject corks.

56. The subject corks were sold by Lafitte and reached Cayuse without substantial change in the condition in which they were designed, manufactured, marketed and sold by the Defendant.

57. On or about May 2017, while the corks were being used for their intended purpose, the corks leaked paraffin and silicon into the wine during the bottling process thereby causing extensive contamination and damage to the wine.

58. The corks, as designed and/or manufactured, were not reasonably fit, suitable or safe for their intended purpose and were otherwise defective, as they contained excessive paraffin and silicon that came out of the corks and into the wine during the bottling operations.

59. The corks, which were designed, manufactured, marketed distributed, and/or sold by Defendant, were not fit and sufficient for the purpose for which they were intended and were not, among other things, of proper, adequate and sufficient design and workmanship, or free from material defects.

60. The defects in the corks rendered them dangerous, defective, and unfit for their intended use and purpose.

61. As a direct result of the dangerous and defective condition of the corks, the wine was contaminated and declared a total loss.

62. The damages sustained by Plaintiffs, as a result of the defective corks, were not caused or contributed to in any manner by Cayuse.

63. Lafitte breached its duty to market a safe product fit for its intended purpose and fit for use in foreseeable locations populated by innocent third parties and the property of innocent third parties.

64. Lafitte breached its duties in connection with the design, manufacture, marketing, sale and/or distribution of the subject corks by having excessive silicon and paraffin in the corks.

65. Lafitte is strictly liable for any and all damages caused by the defects in the corks it manufactured, designed, sold, distributed and otherwise placed in the stream of commerce.

66. As a proximate result of the foregoing, Plaintiffs have sustained damages in the amount of no less than $3,537,167.50, as nearly as presently can be determined, no part of which has been paid, despite due demand.

## FIFTH CLAIM FOR RELIEF
## NEGLIGENT MISREPRESENTATION

67. Plaintiffs repeat, reiterate, and reallege each and every allegation set forth in paragraphs 1 through 66, inclusive, as if herein set forth at length.

68. Lafitte represented to Cayuse that the corks were good and fit for their intended purpose. Moreover, Lafitte assured Cayuse that the cork contamination, once noticed by Cayuse during its quality control testing of Hors Catégories wines and brought to Lafitte's attention, would only affect the Hors Catégories branded corks and not the other corks Cayuse purchased from Lafitte. Lafitte advised that Cayuse could continue with the bottling process for the other wines because these corks were good.

69. Lafitte's representations to Cayuse were false. Lafitte made these representations to Cayuse without any reasonable ground for believing them to be true. Lafitte made false representations to Cayuse with the intent to induce Cayuse to rely upon them.

70. Cayuse was unaware of the falsity of Lafitte's representations at all times relevant to this action. Cayuse relied on Lafitte's representation that its corks were good and fit for the intended purpose. Moreover, Cayuse relied on Lafitte's representation that the cork contamination would only affect the Hors Catégories branded corks. Furthermore, Cayuse relied on Lafitte's representation that it could continue with the bottling process for the other wines because these corks were good. Cayuse was justified in relying upon Lafitte's representations.

71. As a result of the reliance upon the truth of the representations, Cayuse sustained damages in the amount of no less than $3,537,167.50, as nearly as presently can be determined, no part of which has been paid, despite due demand.

## DEMAND FOR RELIEF

**WHEREFORE,** Plaintiffs pray for judgment against Defendant as follow:

1. For damages in the amount of at least $3,537,167.50;
2. For prejudgment interest from the date of Plaintiffs' demand;
3. For attorney's fees to the extent recoverable;
4. For costs of suit and disbursements in this action; and,
5. For such other and further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial on all issues so triable.

Dated: January 24, 2020  **TRESSLER LLP**

By: */s/ Robert S. Crowder*
Robert S. Crowder
Joanna Maxwell
Attorneys for Plaintiffs
**INTERESTED UNDERWRITERS AT LLOYD'S**
*A/S/O* **CAYUSE VINEYARDS LLC**

LA #4812-6173-6881_4 (12038-1)

COMPLAINT